## Elizabeth A. Harding *vs.* Joseph Harding.

DIVORCE: EVIDENCE: ABANDONMENT.—Bill in Equity for divorce *a mensa et thoro*, and for alimony. The evidence was that the complainant, the wife, while confined in child-bed, was told by her husband, more than once, that he would not permit her to remain with him, "that she must leave his house as soon as her confinement was over;" that these statements of the husband were accompanied with allegations impeaching the virtue and chastity of the wife before marriage, and with charges that the child borne by her was not his, but the offspring of another man; and the defendant admitted in his answer, that if she had not gone, he would have removed her from his home, and declared in the presence of witnesses, that the difference between them was irreconcilable,—HELD:

That the expulsion of the wife was as much compulsory as if he had employed force to eject her, and that in the absence of proof of sufficient cause for the conduct of the husband, it must be considered an unjustifiable abandonment and desertion on his part.

By the 3rd sec. of the Act of 1841, ch. 262, a divorce *a mensa et thoro* may be granted for abandonment without regard to its duration.

EVIDENCE: PREMATURE BIRTH OF CHILD: MEDICAL JURISPRUDENCE:—Where parties were married on the 31st of January and the wife gave birth to a child on the 20th of August of the same year, but there was proof of cohabitation between the husband and wife two weeks before the marriage.—HELD:

That the premature birth of the child, alone, affords no sufficient ground to the appellee for denying its paternity.

CUSTODY OF CHILD ON DECREE FOR DIVORCE.—Where the Court is satisfied that the mother is a proper person to take charge of the child, upon decreeing a divorce *a mensa et thoro*, its custody will be awarded to her.

APPEAL from the Equity side of the Circuit Court for Montgomery County:

The bill in this case was filed on the 22d of May 1857, by the appellant against the appellee, for a divorce *a mensa et thoro*, and for alimony. The allegations of the bill and facts of the case, are fully stated in the opinion of this Court.

The cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH, and COCHRAN, J.

43     v. 22.

*A. Randall* and *A. B. Hagner*, for the appellant.

1st. Do the facts authorize the Court to decree a divorce a *"mensa et thoro?"*

We say they do, showing: "first, cruelty of treatment; and secondly, excessively vicious conduct, abandonment and desertion," (the causes stated in the Act of 1841, ch. 262, sec. 3.)

As to the cruelty of treatment. This cruelty may be without personal violence;—it may be a reasonable apprehension of bodily hurt,—something that renders cohabitation unsafe and likely to be attended with injury. *Huhme vs. Huhme,* 2 *Eng. Ecc. Rep.,* 208. *Shelford on Divorce and Marriage,* 33 *Law Lib.,* 235. The law does not require many acts,—one act is sufficient. Nor is it necessary that the conduct of the wife should be blameless. *Same,* 238, 244. Groundless and malicious charges against the wife's chastity, followed by turning her out of doors, with other acts of cruelty, are a ground of separation. *Same,* 239. Abandonment or desertion for any length of time by the husband of the wife, is sufficient for a divorce, *"a mensa et thoro."* *Brown vs. Brown,* 5 *Gill,* 355. If a man fails to supply his wife with necessaries and comforts of life within his reach, and by cruelty compels her to quit him and seek shelter and protection elsewhere, we should have no hesitation in saying it would be an abandonment of her by him, as if he had deserted her and gone away. *Levering vs. Levering,* 16 *Md. Rep.,* 219.

2nd. As to alimony. This point does not seem to have been considered by the Court in any other light than as an incident to the granting of the divorce, and refusing to grant that, nothing is said of alimony. This view does not accord with the history of the jurisdiction of our Courts of Equity in cases of alimony, which they entertained before there was any jurisdiction conferred in cases of divorce.

*Wallingford vs. Wallingford,* 6 *H. & J.,* 488. *Crane vs. Meginnis,* 1 *G. & J.,* 463. Alimony, says Judge MARTIN, is a maintenance afforded to the wife where the husband refuses to give it, or where from his improper conduct compels her to separate from him, page 488 of 6 *H. & J.* See also *Jamison vs. Jamison,* 4 *Md. Ch. Dec.,* 289. Thus we respectfully submit that the right to a decree for alimony to the complainant, is supported by the facts and law of the case, whether a divorce be granted or not.

The third prayer is for the guardianship of the child. This certainly is a matter of equity jurisdiction; the child was of such tender age as required a mother's care. His allowing it to remain with her did not deprive him of the right to take it any time he chose to do so—and therefore the decree was required. This point was decided in *Levering vs. Levering,* 16 *Md. Rep.,* 219.

We do therefore respectfully submit, that the complainant was entitled to all the three remedies she asked of the Court, and that this Court will so adjudge.

*O. Miller* and *N. Brewer,* for the appellee argued:

1. That there is no such cruelty of treatment proved in the case as to entitle the appellant to a divorce *a mensa et thoro.* The terms "cruelty of treatment," as used in the Act of 1841, ch. 262, are well defined, and have been repeatedly adjudicated upon by the Equity Courts of this State, and the proof in this record is totally inadequate to bring the appellant's case within the well known meaning of those terms. *Daiger vs. Daiger,* 2 *Md. Ch. Dec.,* 335. *Coles vs. Coles, Id.,* 341. *Tayman vs. Tayman, Id.,* 393. *Bouic vs. Bouic,* 3 *Md. Ch. Dec.,* 51. *Ricketts vs. Ricketts,* 4 *Gill,* 105. *Helms vs. Franciscus,* 2 *Bland,* 544. *Levering vs. Levering,* 16 *Md. Rep.,* 213.

2. Nor is there any such proof of "abandonment" or "desertion," as to entitle the complainant to a divorce under the 3rd section of the Act of 1841, ch. 262. The abandonment there spoken of must be an abandonment of the party complaining by the party complained against, or caused by his cruelty of treatment. A wife cannot, when in default herself, by her own voluntary act leave her husband, and never offer to return to his house and home, and then say she has been abandoned by him, and call this an abandonment, or desertion, within the meaning of the Act, and thereupon ask for a divorce *a mensa et thoro. Brown vs. Brown,* 2 *Md. Ch. Dec.,* 316, affirmed in 5 *Gill,* 249. *Levering vs. Levering* 16 *Md. Rep.,* 213.

3. Nor is the decree erroneous because it does not sustain the bill for alimony, nor make any provision in reference thereto, and upon this point it will be insisted:

1st. That since the passage of the Act of 1841, ch. 262, Courts of Equity in this State have no jurisdiction to grant permanent alimony, except in cases where a divorce has been granted, or as a consequence of granting the divorce.

2nd. That if this Act of 1841 should not be regarded as repealing the Act of 1777, ch. 12, sec. 14, and it should be held that this latter Act is still in force, and that alimony may be decreed in a case where no divorce has been granted, it is then insisted, that by the terms of this Act of 1777, which declares that the Court of Chancery "shall and may hear and determine all causes for alimony, in as full and ample manner as such causes could be heard and determined by the laws of England in the ecclesiastical courts there,"—to sustain a bill for alimony, such a case must be made out and proved, as would authorize the English ecclesiastical courts to award alimony therein; that is, a case of adultery or cruelty of

treatment must be alleged and proved. Mere separation, or abandonment or desertion, is not sufficient.

3rd. But, at all events, to entitle a wife to alimony, it is not sufficient to prove a voluntary leaving of his house and home by her, or a mere voluntary separation by her from him, and refusal or neglect on his part to support and maintain her. The husband must force the wife to leave him. The separation must arise from his misconduct or cruel treatment.

In support of these positions reference will be made to *Galwith vs. Galwith*, 4 *H. & McH.*, 477. *Wallingford vs. Wallingford*, 6 *H. & J.*, 485. *Crane vs. Meginnis*, 1 *G. & J.*, 463. *Hewitt vs. Hewitt*, 1 *Bland*, 101. *Helms vs. Franciscus*, 2 *Bland*, 544. *Fornshill vs. Murray*, 1 *Bland*, 479. *Wright vs. Wright*, 2 *Md. Rep.*, 429. *Dunnock vs. Dunnock*, 3 *Md. Ch. Dec.*, 140. *Jamison vs. Jamison*, 4 *Md. Ch. Dec.*, 289.

BARTOL, J., delivered the opinion of this Court.

This was a bill filed on the 22nd of May 1857, by the appellant against the appellee, for a divorce *a mensa et thoro* and for alimony. The bill avers, that the marriage took place on the 31st of January 1856, and that on the 20th of August in the same year, the complainant gave birth to a male child, which has been named Joseph Harding; that after this premature birth, and during the period of her confinement, the husband actuated by jealousy and his own evil disposition, charged her with adultery, and threatened to cowhide her to coerce her to acknowledge some other person than himself to be the father of the child, and so violent was his conduct and cruel his treatment, that she was compelled from fear of personal injury to leave his house and fly to her father's house for refuge, on or about the 11th of September 1856, before her entire recovery from her confinement, and

greatly to the danger of her health; she avers, that she has in all things conducted herself chastely, faithfully and affectionately towards him, and earnestly desired to be and remain his true and faithful wife, but disregarding his duty to her, he has aspersed and blackened her fair name, and by his cruelty driven her and his child from his bosom and home, and has wholly abandoned and deserted them, which conduct on his part is the more inexcusable, because he was at the time of his marriage, a widower, and the complainant had not before been married, and was a virgin prior to her intercourse with him; and she charges that her husband has refused to receive her and his child again into his house, and has refused and still refuses to acknowledge her as his wife, and the child as his, and to make any provision or allowance whatever for their support. The bill further charges, that her husband is seized and possessed of large real and personal estate, but that she is entirely without means of support except from her own labor and the charity of her friends. The prayers of the bill are for an answer, a divorce *a mensa et thoro, alimony,* the custody and guardianship of the child, and for general relief.

The answer of the appellee, admits that he became the dupe of the complainant, then Elizabeth A. Thompson, and was married to her on the 31st of January 1856, and that she gave birth to a male child on the 20th of August 1856, not prematurely and before its time, as alleged in the bill, · but to a full and perfect child in all respects, and not the offspring of the respondent as alleged, but of an illicit intercourse between her and some other man. That finding that he was the dupe of a cunning and disreputable woman, who under the semblance and garb of virtue, had deceived him into the obligations of a husband, he did, after the birth of said child, feel and exhibit great concern and uneasiness

that he had taken to his bosom and house, as his wife, and the mother of his motherless children, a woman every way unworthy of his love and the confidence he had reposed in her. He denies that he treated her with cruelty or threatened to cowhide her, or that his conduct was so violent that she was compelled to leave his home, before her confinement was fully ended; but he admits the fact that he did charge her with adultery, and the birth of her child gave him just ground for the allegation, and that he should have removed her from his home, and from exerting a baneful influence upon his children, the offspring of a previous marriage, three of whom are girls. He avers and alleges that she left his house, conscious that she had deceived him, and her departure was the effect of a guilty conscience, and not fear of him. He admits he has made no provision for her and her child's support, nor does he consider himself bound to do so, as she has been guilty of adultery, and the child is the offspring of another man; nor should any part of his property be assigned to her, as by her improper conduct she has forfeited all claim to his love, respect and support; and having answered all the material allegations of the bill, he prays he may be hence dismissed with his reasonable costs, &c.

This answer was sworn to, general replication filed and a commission to take testimony issued, under which a number of witnesses were examined.

We have carefully examined the testimony, and concur in the opinion expressed by the late Judge of the Circuit Court, that the charges of cruelty of treatment made in the bill are not supported by the evidence. In the cases of *Daiger vs. Daiger*, 2 *Md. Ch. Rep.*, 335, and *Coles vs. Coles*, *Id.*, 341, Chancellor Johnson, adopting the principles established in the English Ecclesiastical Courts, and quoting the language of Chancellor Kent, in *Barrere*

*vs. Barrere*, 4 *Johns. Ch. Rep.*, 187, laid down the rule that "mere petulance and rudeness, and sallies of passion may not be sufficient." "There must be a series of acts of violence, or danger of life, limb or health to justify the Court in separating the parties." Judged by this standard, we should be compelled upon the testimony in this case to refuse the petition of the appellant, if the case rested entirely upon the ground of alleged cruelty of treatment by the husband.  But the evidence establishes the fact that the appellant was compelled to leave the house of the appellee and seek a home with her parents. It is true that she was not ejected from his dwelling by personal violence; but after the birth of her child, and while she was unable to leave her bed, he told her more than once that he would not permit her to remain, "that she must leave his home as soon as her confinement was over;" and in his answer he admits that he would have removed her from his house if she had not gone.  The testimony further shows that after she had left, he stated repeatedly that she should not return, and that he would not support her and her child.  This conduct on the part of the appellee was accompanied with allegations of the gravest and most serious character, impeaching the virtue and chastity of the appellant, and charging that her child was not his, but the offspring of another man.

Whatever may have been the causes which lead the appellee to adopt this unhappy suspicion, we are compelled to say that there is no evidence in the cause upon which it can rest.  Every attempt made to impeach the character of the appellant has signally failed, and the testimony clearly shows that before her marriage, her character for chastity was free from suspicion or reproach, and her conduct seems to have been blameless, except only in the fact stated by the appellee himself to two of the witnesses, that she had yielded to his embrace two weeks before their marriage.

This fact may have had some influence upon the mind of the appellee, in giving rise to the suspicion upon which he afterwards acted; but in the absence of any proof impeaching her chastity towards other men, it can afford no justification to the appellee for his subsequent conduct.

The single ground upon which the appellee's charge against his wife's chastity rests, is the premature birth of their child. Whether we consider the testimony of Dr. Palmer, the only medical witness examined, or consult the standard works on medical jurisprudence, we are convinced that the premature birth of the child affords no ground whatever to the appellee for denying its paternity. Fully seven months had elapsed after his cohabitation with her began, a period sufficient for the birth of the child. See *Guy's Med. Jurisp.*, 210.

The conclusion we have come to from an examination of the testimony, is that the charge made by the appellee in his answer, of misconduct by the wife before marriage, is not supported by the proof. The character of this charge and the evident sincerity of the appellee in making it, sufficiently demonstrate that the unhappy difference between them, was, as he asserted to the witness Stabler, wholly irreconcilable. Under these circumstances, he told her to leave his house; her expulsion was as much compulsory as if he had employed force to eject her. And being, according to the proof in the record, without sufficient cause, we must consider it as an unjustifiable abandonment and desertion on his part. So it was decided in *Levering vs. Levering*, 16 *Md. Rep.*, 213.

In our opinion, the learned Judge of the Circuit Court was in error when he said—"there is no proof of abandonment and desertion, and if there was, it had not and could not have existed a sufficient time, according to the Act of Assembly, before the filing of the bill."

44    v. 22.

It has been decided, that "by the third section of the Act of 1841, ch. 262, a divorce *a mensa et thoro* may be granted for abandonment and desertion without regard to its duration." *Brown vs. Brown,* 2 *Md. Ch. Dec.,* 317, and same case in 5 *Gill,* 249.

For the reasons stated, it is the opinion of this Court, that the appellant is entitled to relief, and a decree will be passed reversing the decree of the Circuit Court appealed from, and divorcing the parties *a mensa et thoro,* and granting alimony to the complainant.

In awarding alimony, regard must be had to the pecuniary means and ability of the appellee, which, according to the testimony are somewhat limited. We shall decree and direct him to pay to the complainant the sum of two hundred and fifty dollars in twenty days after the passage of the decree, and the sum of one hundred dollars annually thereafter, in half yearly instalments of fifty dollars, and we shall award to the complainant the custody of their son, being satisfied from the evidence in the cause that she is a proper person to take care of the child.

> *Decree reversed, and decree divorcing the parties*
> *a mensa et thoro, and awarding alimony, &c.*