## JENNIE M. HASTINGS *vs.* GEORGE EDWARD HASTINGS.

*Divorce—Cruelty—Drunkenness—As Justifying Abandonment.*

Mere austerity of temper, petulance of manner, rudeness of language, even occasional sallies of passion, if they do not threaten bodily harm, do not constitute such cruelty of treatment as will be ground for divorce.    p. 181

A series of acts of personal violence, or a menace to the safety of life, limb, or health, or any determined threat of serious bodily hurt, is a sufficient ground for divorce.    p. 181

A single act of violence, slight in character, does not ordinarily constitute cruelty within the meaning of the law as a cause for divorce *a mensa*, though it might do so when it indicates an intention to do serious bodily harm, or is of such a character as to threaten serious danger in the future.    p. 181

Drunkenness is not sufficient ground, *per se,* for a divorce, though it may, in connection with other grave offenses against the marriage relation, be considered as an element in the habit and conduct of the party complained of.    p. 181

Defendant having married plaintiff with knowledge of his habits of excessive drinking, she was not justified in leaving him finally, peremptorily, and unconditionally, because of his resumption of those habits, although to such an extent as to affect her health.    p. 183

*Decided January 16th, 1925.*

Appeal from the Circuit Court for Worcester County, In Equity (BAILEY, J.).

Bill by George Edward Hastings against Jennie M. Hastings. From a decree for plaintiff, defendant appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, and WALSH, JJ.

*F. W. C. Webb,* with whom were *Woodcock & Webb* on the brief, for the appellant.

*John W. Staton* and *John S. Whaley,* for the appellee.

ADKINS, J., delivered the opinion of the Court.

Jennie L. Hastings and George Edward Hastings, appellant and appellee, respectively, were married on the 27th day of February, 1920. Soon after their marriage they took up their abode with appellee's mother at her hotel in Ocean City, Maryland, and lived with her there until about the first of June, when they moved to a cottage owned by the mother near the hotel. During their residence with the elder Mrs. Hastings, they assisted her in the work about the hotel, the daughter-in-law and mother-in-law were congenial, and they all were apparently contented and happy. The trouble seems to have begun soon after they moved to the cottage, when appellant, who had previously been dissipated, returned to his former habit of drinking to excess, which resulted in the separation of the parties, the wife leaving the home on September 17th, 1920. The bill for divorce on the ground of abandonment was filed by the husband on October 10th, 1923, and the suit resulted in a decree granting the plaintiff an absolute divorce.

Defendant testified that she knew before her marriage of plaintiff's drinking, but that he was converted under her influence before the marriage, and said he was going to lead a different life. This she says he did while they remained with his mother; but after they moved he started to drink again, and almost immediately began to complain of the expense of supporting her, and her two daughters by a former husband; was "nasty and aggravating; said he had a hell of a job to raise another man's damn young ones"; that at first he treated the children very well but got tired, and was unkind and unreasonable in correcting them; that he drank al-

most continuously the latter part of the time they remained together; that his drinking, complaining and quarreling "worried me nearly to death. I would have fainting spells"; that she could not sleep and became a total wreck; that on one occasion he threw a fork at her during a quarrel at the supper table when he had been drinking; the fork hitting her on the shoulder as she dodged, but not hurting her; that on this occasion she packed up her things to leave that night "and he pleaded with me to stay. He came next morning and borrowed four dollars. I told him I could not spare it, I might need it. He says, 'Don't leave today, Jennie; if you won't leave I will do the best I can.' I then replacd my furniture and everything was fixed up when he came back"; that his promise of good behavior lasted about a week; that on "the night that I left he had been drinking some during the week and he came home that night drunk, and I said 'Ned, where did you get it'? He says, 'That is none of your damn business, I will drink as long as my money will pay for it.' I says, 'You go ahead, help yourself' "; that on this night, September 17th, 1920, she packed up her things, and sent for the chief of police, who helped her move them to her sister's, Mrs. Collins, who lived across the street. When asked by her counsel why she left her husband, she said "after he threw the fork at me I was afraid to stay with him."

On cross-examination, however, when asked what reason she gave her husband for leaving him, she said: "I had told him before I was going to leave him when he became drunk and abusive, and I kept my promise." Q. You left that time because he was drunk? Ans. He was abusive, cursing. Q. Tell the court what he said that night? Ans. He came in so drunk, and I said you promised me that you were not going to do this again. I asked him where he got it, and he said it is none of your damn business; my money bought it, and if you don't like it you can get out. Q. Is that the reason you left? Ans. Yes. Q. Was that the only reason you left? Surely.

She testified that on some previous occasion "he told, if I didn't get out he was going to put me out and throw the furniture out," but later he begged her to stay, and she did. On the night she left, and a number of times afterwards, appellee begged her to return to him, but she declined to have any communication with him and turned a deaf ear to every appeal.

It must be said that if defendant was justified in leaving plaintiff in the manner she did her refusal to return is open to no criticism, as there is nothing in the record to show there has been any reformation on his part.

Mrs. Baker, one of defendant's children, who was with them during that summer, corroborates her mother's testimony as to plaintiff's drinking most of the time; also as to the fork incident, and as to the statement by him that if her mother did not get out he would put her out. When asked what his attitude was towards her mother and the children she said, "Well, he wasn't exactly abusive that I noticed, but he was fussy and sneery around the house." The only time she saw any act of violence by him was "when he threw the fork across the table." She and other witnesses testified as to Mrs. Hastings' nervous condition resulting from the misbehaviour of her husband.

From the whole testimony it is apparent that the defendant left the plaintiff deliberately and with the fixed determination to sever their marriage relation, and that this determination on her part was irrevocable; that his conduct had been such as to arouse disgust, but not fear.

The contentions of appellant, as stated in her brief, are: 1. That by plaintiff's misconduct she was justified *in fact* in leaving him. 2. That, in any event, she did have such just cause and reason because she would be entitled to a divorce either *a mensa* or *a vinculo* had she seen fit to file a cross bill: (a) On the ground of cruelty of treatment. (b) On the ground of adultery.

Discussing the second point first: (a) The misbehavior of the appellee was gross and disgusting. But it was not of

the character to constitute cruelty of treatment such as has been held in this State to be a ground for divorce. Mere austerity of temper, petulance of manner, rudeness of language, even occasional sallies of passion, if they do not threaten bodily harm, do not constitute such cruelty of treatment as will be ground for divorce. But a series of acts of personal violence, or a menace to the safety of life, limb or health, or any determined threat of serious bodily hurt, are sufficient ground. *Daiger v. Daiger*, 2 Md. Ch. 335; *Childs v. Childs*, 49 Md. 509; *Hawkins v. Hawkins*, 65 Md. 104; *Shutt v. Shutt*, 71 Md. 193.

A single act of violence slight in character does not ordinarily constitute cruelty of treatment within the meaning of the law as a cause for divorce *a mensa*. It was held in *Hoshall v. Hoshall*, 51 Md. 72, that there must be proof of systematic or continued cruelty of treatment or danger to life, limb or health, such as renders impossible the proper discharge of the duties of married life. See also *Goodlines v. Goodlines*, 90 Md. 292.

Every case, however, depends upon its own facts. It must not be understood that in *no case* will a single act of violence constitute a ground of divorce *a mensa*. See *Levering v. Levering*, 16 Md. 213. It depends upon whether such single act indicates an intention to do serious bodily harm, or is of such a character as to threaten serious danger in the future. *Holden v. Holden*, 1 Hagg. C. R. 453, cited with approval by Alvey, C. J., in *Hawkins v. Hawkins, supra*.

In our opinion, the one act of violence, in the present case, did not indicate a deliberate purpose on the part of the plaintiff to injure defendant or constitute a grave menace to her future safety. Nor is drunkenness sufficient ground, *per se*, for a divorce. "It may, no doubt, in connection with other grave offenses against the marriage relation, be considered as an element in the habit and conduct of the party complained of; but, as an independent ground, drunkenness has never been considered, either in this State or in England, as fur-

nishing cause to justify a divorce. *Shutt v. Shutt, supra;
Wheeler v. Wheeler,* 101 Md. 427.

(b) There was some testimony that plaintiff visited the
home of an old colored woman who did not bear a good repu-
tation for chastity. It is urged by appellant that this was
proof of adultery; and that although it had been condoned, a
subsequent cause of divorce for cruelty of treatment revived
the previously condoned cause.

It would be sufficient to say that we have not found a
cause of divorce on the ground of cruelty of treatment. But
it is fair to add that, in our opinion, the evidence does not
support the charge of adultery. It rather indicates that
plaintiff was in pursuit of wine when he went to the home of
the old colored woman.

It remains to consider plaintiff's first contention, viz.:
That even if the defendant had no cause recognized by law
for divorce, yet she may prevent her husband from obtaining
a decree if his misconduct "would render it impossible to
continue the matrimonial cohabitation with safety, health
and self-respect."

In *Polley v. Polley,* 128 Md., at p. 66, the following was
quoted with approval from 14 *Cyc.* 633: "It would seem to
subserve the interests of public policy and the sacredness of
the marriage tie, however, to permit a spouse to set up in
defense of his or her desertion such misconduct on the part
of the other as would render it impossible to continue the
matrimonial cohabitation with safety, health and self-respect,
although the misconduct is not in itself a sufficient ground
for divorce, and some courts have so held." Citing *Lyster v.
Lyster,* 111 Mass. 327; *Stocking v. Stocking,* 76 Minn. 292;
*Gillinwaters v. Gillinwaters,* 28 Mo. 60; *Neff v. Neff,* 20
Mo. App. 182; *Williams v. Williams,* 130 N. Y. 193; *Powell
v. Powell,* 29 Vt. 148; *Yeatman v. Yeatman,* Vol. 1 L. R.
Prof. & Div. 489. See also *Hoffhines v. Hoffhines,* 146 Md.
350.

Every one properly constituted is disposed to rebel at the
suggestion that a drunken husband may continue indefinitely

to subject his wife to the humiliation of intimate association with one so debased, and that she must patiently submit to his abuse, maltreatment, and disgusting conduct, even to assaults of a minor character, if not too often repeated. But in the present case defendant knew of the weakness of plaintiff when she married him and she did it against the protest and warning of his mother, who said to her: "Jennie, I wouldn't marry Ned; of course Ned drinks and you know he does. I rather put up with Ned than see a wife put up with him, and I says if you take my advice you won't marry him." When a woman with her eyes open takes a chance of that sort, it is not too much to expect that she will endure for at least a reasonable time, and endeavor to reclaim her husband. She testified that before their marriage he reformed under her influence. And he kept sober for four or five months after the marriage. It is true, she was not strong physically when she left the hotel, and was tired from her work there; and the testimony shows that the conduct of plaintiff was affecting her health. She would have been entirely justified if, in that condition, she had separated from him for a time, put him on probation and given herself a chance to recover. It is apparent from all the testimony that he was fond of her, and it is by no means impossible that the influence which converted him before marriage might have brought him back again, and prevented a permanent separation. But when the break came it was final, peremptory and unconditional, and there was no encouragement to repentance held out to the plaintiff.

We are unable to say that the learned trial judge, who had the benefit of the presence of the witnesses, in view of all the circumstances of the case, erred in holding that the misconduct of plaintiff was not a justification of the deliberate and unconditional abandonment by the defendant.

*Decree affirmed, appellee to pay the costs.*