## HARRISON *v.* HARRISON

[No. 53, September Term, 1960.]

*Decided November 10, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Robert A. Wallace* for the appellant.

*David Macdonald* for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

This appeal presents for review a decree of the Circuit Court for Montgomery County, in which the plaintiff-wife was awarded a divorce *a mensa et thoro,* alimony and support-money for her children of $100, per week, the custody of her three minor children, and $200 for her solicitor's fee.

The husband and wife, thirty-four and thirty-one years of age at the time of trial, respectively, were married in 1949. After living at several different locations for short intervals of time, they purchased a comfortable residence in Manor Park, a very nice residential community in Montgomery County, where they and their children resided, as a family unit, for some six years.

The wife's bill of complaint was based upon constructive desertion. While she complained, in her testimony, that her husband spent several nights a week playing cards at the club and used a separate automobile when they bowled in the same league, her principal grievance centered around his striking her on the night of March 12, 1959. The husband admitted that he played cards at the club, which is a part of the com-

munity set-up, but gave as his reasons therefor his wife's nagging and her refusal, without just cause, to have sexual relations with him. The wife admitted her refusal, on occasions, to have sexual intercourse with him, but stated that they did indulge in such intercourse, from time to time, until they finally separated.

We turn now to the occurrences of the night of March 12th. There had been two previous occasions when the husband had slapped or pushed his wife, but they were of such trivial significance that they need not be detailed. On the evening of March 12th, the parties had attended a family dinner, at a restaurant, given in honor of the husband's mother, to celebrate her birthday. The wife testified that she and her husband each had several high-balls at the dinner, and returned home at about 11:00 P.M. She took the baby-sitter home, and, when she came back, an argument ensued. She felt "irritated" and aggrieved; because she had had a birthday several weeks before, and no celebration or recognition of it had been made by her husband. They had had disagreements before, but, on this particular night, the argument seemed to get more heated than usual. They went to bed, and her husband wanted to have sexual relations with her, but she refused. She just did not "feel like it." Because of the argument, she was "not interested," did not "feel up to it," but her husband "tried to more or less to force [her]." She "guessed" that she pushed him, and when he tried to make love to her, she bit his tongue. When she bit his tongue, he struck her. She found herself upon the floor, but was not certain as to how she got there. She thought that her husband "more or less pushed" or shoved her. While on the floor, he kept beating her about her face, neck and upper part of the body. When she got up, both of her eyes were "quite swollen," her nose was bleeding, and her lips were cut. She had a bump on the back of her head, which she thought resulted when "she hit on the floor." Her husband fixed her an ice bag, which she applied to her face. Shortly thereafter, she went across the street and awakened two of her neighbors, with whom she spent the night. Early the next morning before her husband had left for work, she returned home and prepared the children for school. She went to a doctor later that day, but no medi-

cal treatment was necessary. She left the home on March 13th, and she and her husband have not cohabited since.

Mrs. Adair, the neighbor, corroborated the plaintiff in regard to the fact that the plaintiff had come to her home during the night of March 12th, and had spent the night with her. She also testified that she saw the bruises and injuries of which the plaintiff complained.

The husband's version of what occurred on March 12th differed, somewhat, from that of the plaintiff. When the wife returned from taking the baby-sitter home, she and he retired to their bedroom and both removed all of their clothing. They did not have any argument, and she seemed more willing to have sexual intercourse than he had ever seen her before. During the course of having sexual relations, he kissed his wife, and she bit his tongue; whereupon, for a "split second," he lost his head completely and struck her; he did not recall, with certainty, how many times. He thought that he hit her with his open hand, but was not positive. He was certain, however, that he did not strike her with anything except his hand or fist. He didn't recall whether she jumped out of bed, or whether he pushed her. When he struck her, he only lost his head for a moment. After that, he ran into the kitchen, got an ice bag for his wife, and told her he was "awful sorry," but had just lost his head. He further testified that he and his wife have not cohabited together since March 13, 1959.

The plaintiff offered four pictures of herself, taken during the afternoon of March 13th. They disclosed a discoloration of a small area around all of the left eye (which in ordinary parlance could properly be described as a mild black eye), and a small area under about half of the right eye. They also show small superficial bruises on her face. These exhibits show no injury to the eyes, themselves, nor any bruises or abrasions on, or about, her neck or chest.

The appellant argues that the wife, when she bit her husband's tongue, provoked the assault upon her of March 12th, and says she cannot avail herself, as a ground for divorce, of any misconduct on the part of the husband which she, herself, provoked. This argument has considerable force. In *Childs v. Childs*, 49 Md. 509, 513, 514, *Clatterbuck v. Clatterbuck*,

150 Md. 648, 133 A. 316, and *Collier v. Collier*, 182 Md. 82, 94, 95, 32 A. 2d 469, this Court recognized the general rule to be that a divorce will not be granted on the grounds of cruelty when the cruelty is provoked by the misconduct of the complainant.[1]  But, under the facts of the present case, we see no reason to invoke this principle of law.  If we lay aside entirely any question of provocation, it is clear, we think, that the single act of violence complained of by the appellee does not measure up to what the law of this State requires for a showing of cruelty of treatment sufficient for the granting of a divorce, or as constituting a justification for the wife's living away from her husband.  This Court has repeatedly stated that the law of Maryland does not countenance the separation of husband and wife, except for grave and weighty causes. And it is well settled that, ordinarily, a single act of violence does not constitute cruelty of treatment within the meaning of the law as a cause for a divorce *a mensa.  Porter v. Porter,* 168 Md. 296, 177 A. 464; *Hastings v. Hastings,* 147 Md. 177, 181, 127 A. 743; *Eberwein v. Eberwein,* 193 Md. 95, 101, 65 A. 2d 792; *Elzey v. Elzey,* 193 Md. 13, 19, 65 A. 2d 563.  In order to constitute cruelty of treatment, a single act of violence must indicate an intention to do serious bodily harm, or be of such a nature as to threaten serious danger in the future. *Hastings v. Hastings,* 147 Md. 177, 181, 127 A. 743; *Scheinin v. Scheinin,* 200 Md. 282, 289, 89 A. 2d 609.  We do not think the evidence in the instant case, as we have outlined it above, disclosed an intention on the part of the husband to do his wife serious bodily harm, or that it threatened serious danger to her in the future.  The parties had lived together for some nine years.  During that time, the husband had not displayed any characteristics of brutality towards his wife, nor of his having an uncontrollable temper.  On this one occasion when she bit his tongue, he "lost his head" for a moment and struck her.  He repented immediately thereafter, got her an ice bag and told her he was sorry.  These acts of contrition on his part gave no indication of serious danger to the wife in the future.

---

1. Also, compare Stirn v. Stirn, 183 Md. 59, 66, 36 A. 2d 695.

The facts in the comparatively recent case of *Egress v. Egress*, 202 Md. 510, 97 A. 2d 335 (1952), are, in some respects, quite similar to those in the case at bar. There, the wife brought suit for a divorce on the ground of cruelty. She testified to three acts of violence upon her person by her husband. Two were quite trivial, but the opinion (at page 513) states with reference to the third that "her [the wife's] claim as to the extent of the beating was corroborated by a physician who saw the bruise marks on her neck, jaw and arms." The claim was made that the wife had provoked the husband into committing the assault upon her, but the Court stated: "Even if it were entirely unprovoked and unexplained, the single beating of any consequence * * * falls far short of what the law of this State considers cruelty sufficient for a divorce or justification of the wife in living apart from her husband," and then went on to affirm the trial court's dismissal of her bill. We hold, in the instant case, that the one act of violence complained of did not constitute cruelty of treatment, as that term is used in the law, so as to be a ground for a divorce *a mensa*, or to form a basis for justifying the wife in living separate and apart from her husband.

This, of course, will require a reversal of that part of the decree which granted the wife a divorce; also that part which awarded her $100, per week, "as alimony and for the support and maintenance" of the children, in order that the chancellor may determine what is the proper allowance that should be made for the support and maintenance of the children. That portion of the decree which awarded the custody of the children to the appellee (with the right of visitation by the father to the children, and the right to have the children visit him), subject to the further order of the chancellor, is affirmed.[2] Also, the order requiring the appellant to pay $200 to the appellee, as her solicitor's fee, is affirmed.

> *Decree affirmed in part, and reversed in part, and cause remanded for further proceedings not inconsistent with this opinion. The appellant to pay the costs.*

2. This portion of the decree was not contested in this appeal.