MURPHY *v.* MURPHY

[No. 47, September Term, 1967.]

*Decided January 9, 1968.*

*Motion for modification of opinion filed January 12, 1968; motion granted and opinion modified February 6, 1968.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, MCWILLIAMS and FINAN, JJ.

*C. Osborne Duvall* for appellant.

*James A. Ehrhart,* with whom was *Richard L. May* on the brief, for appellee.

FINAN, J., delivered the opinion of the Court.

The parties to this divorce proceeding were married in Buffalo, New York, in 1936. The only child born of this union is presently over 21 years of age and self-supporting.

The bonds of matrimony encircling the parties were stretched taut during the early morning hours of July 3, 1960. On the evening of July 2, the Murphys met a group of friends at a tavern for several rounds of their favorite liquid refreshment. After closing time, the parties transferred to the Annapolis apartment of one of the couples, where more drinks were served. Both Mr. and Mrs. Murphy testified that in the course of the evening they each consumed several alcoholic beverages. The party came to a sobering end when an unidentified woman at-

tempted to extinguish her cigarette in the palm of a man's hand, after which the Murphys proceeded home.

Upon arriving at their home between 2:30 and 3:00 a.m., the argument ensued, apparently over the conduct of the woman with the lit cigarette. According to testimony of the appellant, Mrs. Murphy, her husband (the appellee) walked out of the kitchen, and she followed him and attempted to slap him. He then grabbed her arm and she scratched his face and tore his shirt. He also tore her dress, and then left the house. Mrs. Murphy was unable to explain the cut on her husband's forehead, or the injury to the right side of his neck, his right shoulder or his chest. She also denied striking him with an ashtray or any other object of that nature.

The appellee, Mr. Murphy, was unfamiliar with the cigarette-burning incident which occurred at the cocktail party. He testified that when they returned home, Mrs. Murphy "started" at him and scratched him and broke his eyeglasses. When he attempted to grab her arm she commenced to hit him repeatedly about his head and face with a solid glass ashtray. Appellee then left the house, although his testimony was to the effect that he had no intention of terminating the marriage when he left.

Corroboration of appellee's testimony was provided by a friend, an Anne Arundel County police lieutenant, who received a call from Mr. Murphy shortly after the altercation and arranged to meet him about 5:00 a.m. The officer testified that when he first saw the appellee, the latter was sitting in his car with a cut on his head, scratches on his face and bloodspots coming through his shirt. Appellee also showed his friend the eyeglasses that Mrs. Murphy allegedly broke in the scuffle.

The record indicates that, although the marriage had been far from blissful, and arguments were not infrequent, the only other time that physical force accompanied a verbal assault occurred at least twenty years prior to the hearing, when the husband struck the wife. The husband testified that on occasion the wife belittled and demeaned him in front of friends; at such times she accused him of running around with other women. He also testified that several times the wife threatened to kill him and

that this occasioned sufficient apprehension on his part that he removed his revolver from the home and took the clips out of his rifle. Within eighteen months prior to the separation there had been two scuffles between Mr. Murphy and his wife. There was no corroborative evidence to support these allegations, and the wife denied the more recent altercations, as well as the threats to his life.

Subsequent to the husband's departure from the home on July 3, the parties met on several occasions and discussed a reconciliation, however, they never resumed the marital relationship, and eventually, attempts at reconciliation were abandoned.

On January 22, 1963, the appellant filed a bill for separate maintenance based upon the alleged desertion of appellant by her husband. Appellee answered and then filed a cross-bill against the wife seeking a divorce *a vinculo matrimonii*, based on constructive desertion of the appellee. After the hearing the Chancellor dismissed the bill of complaint (except for the allowance of counsel fees) and granted the appellee a divorce *a vinculo*, on the cross-bill. This appeal questions both the sufficiency of appellee's corroborative evidence and the viability of the constructive desertion allegation in the context of the above outlined facts. This being a contested case the Court is of the opinion that, although the law in Maryland would accept the testimony of the police officer as sufficient corroboration [1] of the act of violence occurring the early morning of July 3, the lower court erred in finding sufficient evidence of a constructive desertion as would support an *a vinculo* decree. Accordingly, we reverse the court below.

Judge Prescott (later Chief Judge) succinctly stated the law of this State which controls the factual picture presented by the

---

1. Judge Horney, speaking for the Court, in Kerber v. Kerber, 240 Md. 312, 316, 214 A. 2d 164, 166 (1965), said: "While only slight corroboration is necessary in contested cases, the invariable rule is that every element to justify the relief sought must be corroborated." See also Taylor v. Taylor, 238 Md. 312, 208 A. 2d 685 (1965); Hodges v. Hodges, 213 Md. 322, 131 A. 2d 703 (1957); Cullotta v. Cullotta, 193 Md. 374, 66 A. 2d 919 (1949); Kelsey v. Kelsey, 186 Md. 324, 46 A. 2d 627 (1946); Md. Rule S 75.

case at bar, in *Harrison v. Harrison,* 223 Md. 422, 164 A. 2d 901 (1960):

> "This Court has repeatedly stated that the law of Maryland does not countenance the separation of husband and wife, except for grave and weighty causes. And it is well settled that, ordinarily, a single act of violence does not constitute cruelty of treatment within the meaning of the law as a cause for a divorce *a mensa. Porter v. Porter,* 168 Md. 296, 177 A. 464; *Hastings v. Hastings,* 147 Md. 177, 181, 127 A. 743; *Eberwein v. Eberwein,* 193 Md. 95, 101, 65 A. 2d 792; *Elzey v. Elzey,* 193 Md. 13, 19, 65 A. 2d 563. In order to constitute cruelty of treatment, a single act of violence must indicate an intention to do serious bodily harm, or be of such a nature as to threaten serious danger in the future. *Hastings v. Hastings,* 147 Md. 177, 181, 127 A. 743; *Scheinin v. Scheinin,* 200 Md. 282, 289, 89 A. 2d 609." *Id.* at 426, 164 A. 2d at 903.

See also Chief Judge Alvey's opinion in *Hawkins v. Hawkins,* 65 Md. 104, 111, 3 A. 749 (1886).

It should be borne in mind that in *Harrison v. Harrison, supra,* although the petition was for an *a mensa et thoro* decree, yet the gravamen of the wife's complaint was not cruelty, but constructive desertion, as in the instant case.

We are also aware that in *Kruse v. Kruse,* 179 Md. 657, 22 A. 2d 475 (1941), Chief Judge Bond said:

> "It is settled that conduct of one spouse which compels the other to leave may justify a divorce to that other on the ground of desertion, even though the conduct may not justify a divorce on the ground of cruelty. *Harding v. Harding, supra* (22 Md. 337) ; *Singewald v. Singewald,* 165 Md. 136, 137, 166 A. 441. It must, however, render impossible the continuation of matrimonial cohabitation with safety, health, and self-respect. *Schwartz v. Schwartz,* 158 Md. 80, 90, 148 A. 259." *Id.* at 653, 22 A. 2d at 478.

See also *Eberwein v. Eberwein,* 193 Md. 95, 65 A. 2d 792 (1949), and cases cited therein.

Even though the cruelty required in a constructive desertion case may be less than a case wherein an *a mensa* decree is sought on the grounds of cruelty, yet, the objectionable conduct still must be such as to render continuation of the marital relationship impossible, if the complaining spouse is to preserve his or her health, safety or self-respect. *Eberwein, supra.* Obviously, for such a situation to exist, there must be a pattern of persistent conduct which is detrimental to the safety or health of the complaining spouse, or so demeaning to his or her self-respect as to be intolerable. If there be but one single violent act, it would have to be of such magnitude as to warrant the assumption that the safety or health of the complaining spouse would be endangered in the future, either from its lingering effect or the probability of its recurrence; or that it was so demeaning as to have left the self-respect of the complaining spouse shattered beyond repair.

In the case at bar the only conduct which justified the appellee leaving the marital domicile, found by the Chancellor to be corroborated by the evidence, was the violent incident that occurred on the early morning of July 3, 1960. There was no corroboration as to past demeaning acts on the part of the wife or of other acts of cruelty. The Chancellor was of the opinion, "that the husband was justified in *being apprehensive as to his future safety because of the viciousness of the attack without reason."* (Emphasis supplied.) However, we do not share the Chancellor's view, because we are of the opinion that the evidence fails to substantiate the existence of apprehension or anxiety on the part of the husband as to his future safety.

We believe the following exchange, by way of question and answer on cross-examination, between the husband and opposing counsel, is most revealing as to the husband's state of mind:

Q. Right, my question is, when you left July 3rd, you did not have any intention of terminating the marriage?

A. No, if I had I wouldn't have gone back to my wife several times and talked to her after that about reconciliation.

Thus, from the husband's own testimony it is obvious that the fear he held for his own health and safety, an hour or two after the attack, was not sufficiently dominant as to compel a decision on his part to terminate the marriage, or to preclude thereafter several attempts by him towards reconciliation with the wife.

We are of the opinion that the portion of the decree of the lower court dated November 4, 1966, granting a divorce *a vinculo matrimonii* to the cross complainant Francis E. Murphy be reversed and his cross-bill dismissed; we affirm the Chancellor's dismissal of the appellant's bill of complaint.

> *Decree reversed as to granting divorce a vinculo matrimonii; affirmed as to dismissing bill of complaint; appellee to pay costs.*