## OTTERBACHER *v.* OTTERBACHER

[No. 75, September Term, 1965.]

*Decided February 3, 1966.*

The cause was argued before PRESCOTT, C. J., and HORNEY, MARBURY, BARNES and McWILLIAMS, JJ.

*J. Lloyd Niles,* with whom was *John C. Tracey* on the brief, for appellant.

No brief and no appearance for appellee.

McWILLIAMS, J., delivered the opinion of the Court.

This is another skirmish in the war between men and women. The protagonists became husband and wife in 1944 and their marriage endured until July of 1964 when the wife sued for a divorce a mensa et thoro. She has appealed from the decree dismissing her bill of complaint.

The incident which the wife claims justified her leaving the husband occurred on 18 June 1964. She had come home from work about 4 P. M. and, since it had been a hot day, she made a "Tom Collins" for herself and her mother, who was visiting them. When the husband arrived he busied himself with some back issues of the Wall Street Journal. He had been wanting to sell their bonds so he could buy some shares of Comsat but she would not agree. The wife and her mother began to "needle"

him about a new vacuum cleaner. This was an explosive subject because it seems she had bought a cheap one without consulting him. Even so, he said, whenever she complained about it, which was often, he found that it was full of dirt, which she was "too lazy" to take out. The "needling" continued and eventually he reproached her, obscenely she says, for nagging him in the presence of others. Whereupon she hurled the "Tom Collins" glass at him with force and accuracy sufficient to shed a quantity of blood. After he had picked the pieces of broken glass out of his head and wiped off his face he came back into the room only to be hit by a towel. Intending to take her into the back room "to tell her once again for the last time she was never going to throw another dish at me" he had to grab her by the hair to keep her from tearing his clothes. She said "he grabbed me by the hair and drug me about six feet down the hall." She *decided at that time it was best to part."* (Emphasis supplied.)

The wife complains of another occasion, about six months earlier, when, according to her, he knocked her off of the older daughter's bed, sat on her and pulled her hair. He says that on the way home after visiting a neighbor she taunted him about the children's lack of affection for him. When they arrived home he went upstairs to talk to the oldest daughter. The wife came into the room, sat on the bed and started to talk. When he reached over to put his hand over her mouth she bit his thumb. In the ensuing scuffle she fell to the floor and he sat astride her to restrain her. He said his thumb was very nearly bitten off.

The transcript relates in melancholy detail other trivia of their last months together, little of which is interesting and none of which has any special relevance to the question before us. The case was tried before Judge Powers who observed the appearance and demeanor of the witnesses and their manner of testifying. In his opinion he said:

> "While, certainly, no one would approve of the conduct of the husband, taking the testimony most favorable to him of incidents which occurred and, even accepting completely the testimony of the plaintiff, his conduct as a husband and father was not admirable.

But in at least one of the incidents the first physical violence was started by the wife, by throwing something at the husband and inflicting some minor physical injury on him.

"A review of the cases on this subject leads the Court to the conclusion that the facts of this case are not sufficiently aggravated to justify, under the law, the wife's leaving the husband. Moreover, it is quite clear that the evidence does not make up cruelty under the Statute.

"The next question is whether the conduct of the husband toward the wife was sufficient to justify her leaving, thus constituting constructive desertion on his part. My conclusion is that the day by day continuous relationship between the husband and wife * * * [was] not such as to make his conduct unbearable to the wife. The Court concludes that a divorce in favor of the wife on the grounds of constructive desertion cannot be granted under the facts of this case.

"Whether she, aside from the law, feels justified in leaving is a personal and individual decision. Certainly, no law can require one spouse to live with the other. If she interprets his conduct as justifying her leaving, and it falls short of the legal requirements, then the law affords her no redress.

"This is one of the very few cases that I have heard where it appears that, considering the four very fine children, and their age being such that they need both parents, it would be highly desirable for both parties to try to start over anew with a much greater effort to try to get along.

"I certainly understand that life isn't completely pleasant around the household, in view of the husband's temper [which we might observe was no worse than the wife's], but marriages are for better or worse, and there must be give and take in any marriage. The Court is not going to lecture two people who have been married twenty years on how to get along with each other, but it appears that it was a reasonably

satisfactory relationship for a good part of the twenty years, and the best evidence of that is the fine children that these people have raised. They don't show any evidence of having been ruined by the conditions at home which they have been exposed to."

We agree with Judge Powers and by way of additional support for the views expressed in his opinion we repeat what Judge Henderson, for the Court, said in *Peed v. Peed,* 232 Md. 220, 221, 192 A. 2d 494 (1963) :

"It is too well settled to require citation of authority that sallies of passion, rudeness, and even occasional acts of physical violence, do not constitute legal cruelty when not carried to dangerous extremes. Since the Chancellor's findings are supported by the evidence, we cannot say he was clearly wrong either on the point of desertion or the point of cruelty."

See also *Thurlow v. Thurlow,* 212 Md. 222, 129 A. 2d 170 (1957) ; *Sullivan v. Sullivan,* 199 Md. 594, 87 A. 2d 604 (1952) ; *Benton v. Benton,* 197 Md. 373, 79 A. 2d 146 (1951) ; *Thomas v. Thomas,* 197 Md. 15, 78 A. 2d 225 (1951) ; *Eberwein v. Eberwein,* 193 Md. 95, 65 A. 2d 792 (1949).

*Decree affirmed. Costs to be paid by appellee.*