## SMITH *v.* SMITH

[No. 51, October Term, 1951.]

 

*Decided December 7, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Meyer Reamer* and *Irving S. Reamer* for the appellant.

*Malcolm J. Coan* for the appellee.

MARKELL, J., delivered the opinion of the Court.

This is an appeal from a decree granting the wife a divorce *a mensa.*

The parties were married in 1924, when they were both under twenty. They have two sons, both adults and married. Since 1940 they have frequently quarreled. One or more previous bills for divorce were filed. They both live in the same house, not now as husband and wife. When they had an "argument", she would strike him and he would strike her, apparently without lasting harm to either. His net earnings have ranged from zero to five hundred dollars or a thousand dollars a year. They both were practically supported by his mother,

whose second husband's death in 1950 has reduced her income. For some years the mother had employed the husband at twenty dollars a week at a tavern which she sold about 1945. The mother owns, but does not collect, a ground rent on the house owned by husband and wife as tenants by the entireties. The mother gave the wife forty dollars a week, allowed the husband to collect a rent of two hundred and fifty dollars a month from a property of the mother's, and frequently paid bills for him and made him other gifts. The husband suffers from deafness and, he says, from heart trouble and stomach ulcers. The wife is sceptical about his ill health, but the trial judge did not definitely discredit it. He owns a boat on which he takes out fishing parties, for hire, in Florida in winter and from Annapolis in summer. For some years he has gone to Florida (without his wife) in winter, for his health or for fishing or for both, and has frequently gone fishing in the boat in summer, staying days at a time. In these respects his conduct in 1950, apart from statements ascribed to him by the wife, was not appreciably different from their manner of living in former years.

Neither husband nor wife drew a prize in their matrimonial lottery. For industry and either zeal or capacity to support his wife his pecuniary value is low. In his testimony he was disposed to rhapsodize about their happy home and family—if the wife would refrain from excessive drink—but there seems to be little in him to hold a wife's affection. She admits she drinks beer, but denies that she becomes intoxicated. If, as she says, she could drink eight bottles, at a protracted sitting, without becoming intoxicated, it may be that, as the husband says, their bedroom smelled like a brewery and she was not a pleasant companion. However, neither non-support nor drunkenness is a ground for divorce.

In the bill of complaint, filed October 2, 1950, the wife alleged that on June 23, 1950 the husband deserted her without just cause or reason, declaring his intention to live with her no longer, that this abandonment and

desertion has continued uninterruptedly until the present time, is deliberate and final and the separation is beyond any reasonable hope or expectation of a reconciliation. At the trial she testified in support of these allegations. The act of desertion was "He packed his clothes and went down on his boat to Annapolis", as he did many times before and since, and apparently intended to do before they quarreled the night before. She says, "He said he was through, he was not going to live with me. There was no law to make him live with me, and he just left." He says he came home the night before and found her in bed drunk and the bedroom smelling like a brewery. She admits she had been drinking, but denies that she was drunk. He says he had some work to do on the boat, and came back home two or three days later after he had done it. She says, "He was down there a couple of weeks", and then "would come up once a week and get clean clothes and a shower, and go right on down again."

One night the last week of August she came home about two or three o'clock, had no key and had to climb in through the back window. Her husband came in. "He gave me the devil. We had come in and we were both feeling good"; she had been drinking. Having testified that the desertion on June 23, 1950 had "continued uninterruptedly until the present time" and on cross-examination, that on the August night "nothing [else] that I can recall" happened, she was asked, "You say you don't recall anything else that happened?" She answered, "* * * Yes, there was something else that happened. We had intercourse, and, he told me at the time, he says, 'I am still leaving'." He says she was the aggressor but both were willing. In response to leading questions by her own counsel (not her counsel in this court) she testified, "Q. You say this act of intercourse took place between you and your husband in August, 1950. I think you said you tried to make up to him? A. Yes. [She had not in fact said so.] Q. Is that the reason you performed the act of intercourse with him? A. Yes."

We do not find evidence of desertion on June 23, 1950. If we did, the marital relations in August not only (*a*) amounted in law to a termination of any existing desertion and a condonation of any previous marital offenses of either against the other, but (*b*) show that in fact neither party considered that there had been any desertion. If he had deliberately and finally deserted her, there was neither excuse nor occasion for him to "give her the devil" for coming home late drunk. To constitute condonation, other conduct may require evidence of intent, but we think the sound view is that the law itself ascribes to marital relations the conclusive effect of condonation and specifically of terminating desertion. *Collins v. Collins*, 194 La. 446, 193 So. 702; *Trussell v. Trussell*, 116 Pa. Super. 592, 177 A. 215. Such relations are legally compatible only with marriage, not with separation. The concept of "constructive desertion", when the deserter and the deserted continue to live under the same roof, cannot make out of marriage a hybrid status of separation with occasional concubinage. It has not been argued and there is no evidence that between August and October 2, 1950, any act of desertion occurred or any act that revived any condoned offense. The evidence fails to show any condition of condonation or any previous marital offense to be condoned. If the wife's reason for her conduct was a desire for reconciliation, there was no outward manifestation of that or any reason other than mutual inclination. In any event, a reason for an act is not a condition and does not change the nature of the act.

Ordinarily divorce cases call for application of the rule that when the trial judge has seen and heard the witnesses, his findings of fact will not be set aside unless clearly erroneous. In the instant case we do not feel that we are at variance with the trial judge on any question of credibility. We think the trial judge was in error in granting a divorce *a mensa,* without adequate ground for divorce, because he thought such a disposition of the case would be beneficial to the parties. In his

opinion the judge said, "* * * You are not dealing here with a young married couple with children who are infants, and I realize, of course, that the State is interested in keeping the marriage a going concern, so to speak. At the same time it does seem to me for many reasons the wife should be given a divorce *a mensa,* with reasonable support, in this case. * * * Coming back again to the constructive desertion, that is the situation that seems to go back to the 23rd of June, when she had been out with her brother and sister-in-law, I think she said, and possibly somebody else, and came home, and she says she was in bed. She admits she had had a few drinks with her brother, eight, I think she said. He said when he came home at nine o'clock there was no supper for him, and she was in bed drunk, and one thing led to another, and he packed up and went down on his boat and stayed there according to her up until sometime in August, and according to him it was three or four days. I am not overlooking the fact there was intercourse admittedly between the two when he was back there in August. Intercourse can be conditional, of course—conditional on a reconciliation. She said that is why it took place. She was hoping it would effect a reconciliation, and when the intercourse was over, he said it was over, and left. He said she got up out of bed and went into the other room. Be that as it may, I think that the practical and proper solution is as I have said, a divorce *a mensa* for Mrs. Smith."

For the reasons stated, we think this view is not in accord with the law.

*Decree reversed and bill dismissed, appellant to pay the costs.*