JOAN MURPHY NEFF *v.* JOHN L. NEFF

[No. 40, September Term, 1971.]

*Decided October 5, 1971.*

The cause was argued before MURPHY, C. J., and ANDERSON and CARTER, JJ.

*William C. Staley,* with whom were *Staley, Prescott & Ballman* on the brief, for appellant.

*Harvey B. Steinberg,* with whom were *Steinberg & Seres* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

Appellant Mrs. Joan Neff filed for a divorce *a mensa et thoro* on grounds of cruelty or in the alternative constructive desertion. Her husband John Neff cross-filed for desertion. This case comes to us now on an appeal by the wife from dismissal of her bill of complaint and the granting of husband's cross-bill. In the proceedings below the court found that while there was one incident of an act of cruelty, the parties continued to live together as husband and wife until the wife left the marital home four months later. In the court's opinion there was no justification for the wife to leave at the time she did; her life was not in danger, nor had the marriage itself rendered her physically or mentally incapable of continuing with the marriage. While the court found some disagreement to exist during the marriage, it felt that it did not justify the appellant in leaving. Finding that the wife left the husband unjustifiably, the court held the wife deserted the husband. Appellant challenges these findings and contends that the application of the law to the facts presented was in error.

The record reveals that the parties were married on October 11, 1969 in Santa Barbara, California. They had previously met in 1948, Mr. Neff's first wife having been a good friend of the appellant.

Sometime in February 1969 after his first wife's death, Mr. Neff contacted the appellant who was then living in California. After seeing Mr. Neff on his several business trips to California, Mrs. Neff accompanied him and his two teenage children on a trip through Southern California that summer. In August Mrs. Neff visited the appellee's home in Maryland and shortly thereafter the parties were married.

In the proceedings below, Mrs. Neff testified that upon returning to Maryland, appellee told her not to unpack the things she had shipped from California; that he had made a mistake; that he never loved her. She told the court that on December 17, 1969 appellee struck her in the face with his fist, knocking her to the floor, and that he then kicked her. She further stated that he was intoxicated, used vile language, and told her that she was to leave. This incident was not denied by appellee and was corroborated by appellee's eighteen year old daughter who generally supported appellant's testimony. Mrs. Neff testified that after the physical assault, her husband got an ice pack for her face and apologized for his behavior. Appellant described her injuries as a slight bruise on one eye, a slight cut on the other eye, sore jaw, a swollen, bruised and cut inner lip, and bruises on her arms, back and side. She described the atmosphere after this incident, up until the time she left the marital abode four months later, as very tense. Her husband was very critical, complained constantly, threatened her well-being by drinking, shook his fist in her face, and repeatedly told her to leave. His general attitude was one of coolness and disaffection. She testified that during this period she took tranquilizers. While appellee was away on business, Mrs. Neff consulted an attorney. Upon her husband's return, she requested that he come with her to her lawyer's office. This resulted in a disagreement, during which

appellee told his wife that he didn't love her, never loved her, and couldn't even kiss her. That same afternoon Mr. Neff called his wife and told her that she should not have consulted an attorney, that she married him for his money, and "you are going to stay home and stay quiet for the rest of your life and you are not talking to any more lawyers." Mrs. Neff became afraid that some physical violence would occur upon her husband's return and at that time decided to leave. Up until that time both parties had continued to live together as husband and wife.

Appellee's recollection of the courtship and marriage was at best scanty. His general answer to the questions asked him in the proceedings below was that he didn't remember. He did not recall proposing to his wife. He claimed that he had never invited her to visit his home. He testified that his wife presented a slovenly appearance, had bad habits, ate like a pig, and that she planned, plotted and pressured him into marrying her. He admitted that he didn't love his wife. He denied making the phone call which precipitated her departure from their home. He could not remember what cars he had owned, the salary he made or his income tax return information. While he did not deny the single act of violence, he denied ever threatening his wife subsequent thereto.

Evidence in the record showed that during the marriage appellee gave his wife access to a joint checking account, $100.00 per week spending money, paid her mother $75.00 a month, bought his wife a car of her own and was paying off debts which she had incurred prior to the marriage.

Ordinarily a single act of violence slight in character does not constitute cruelty of treatment as a cause for divorce *a mensa* unless it indicates intention to do serious bodily harm, or is of such a character as to threaten serious danger in the future. *Applegarth v. Applegarth*, 239 Md. 92, *Hastings v. Hastings*, 147 Md. 177. Such violence need not be of a physical nature to constitute

cruelty. "It is now accepted that cruelty as a cause for divorce includes any conduct on the part of the husband or wife which is calculated to seriously impair the health or permanently destroy the happiness of the other. Thus, any misconduct of a husband that endangers, or creates a reasonable apprehension that it will endanger, the wife's safety or health to a degree rendering it physically or mentally impracticable for her to properly discharge the marital duties constitutes cruelty within the meaning of the divorce statute." *Scheinin v. Scheinin*, 200 Md. 282. From the evidence presented in the instant case we cannot say that the chancellor was clearly erroneous in his finding that the wife was not entitled to a divorce on grounds of cruelty, or that the appellant by her actions had condoned her husband's conduct. In *Scheinin v. Scheinin, supra*, the Court of Appeals expressed its adherence to the rule that marital neglect, rudeness of manner and the use of profane and abusive language does not constitute cruelty. Nagging, austerity of temper, petulance of manner, rudeness of language and even sallies of passion are not of themselves sufficient to justify separation, as a basis for divorce, unless they threaten bodily harm. *Hockman v. Hockman*, 184 Md. 473. It does not appear from the evidence presented that appellant was in such fear for her health or safety to constitute sufficient grounds for a divorce based on cruelty. In *Poole v. Poole*, 176 Md. 696 (corroboration of but one assault) the court found that alleged outbreaks of temper, cursing, and swearing. without more, would furnish no grounds for divorce and that if a decision depended upon evidence of physical violence, it would not avail the plaintiff as she had condoned her husband's actions by continuing to live with him for more than four months with no apparent fear of injury to her person or health. While resumption of marital relations *per se* does not constitute condonation in all circumstances, it would seem that condonation would occur unless resumption was motivated by practical necessity such as fear of violence and further indignities. *Sullivan v. Sullivan*, 223 Md. 74. We

do not find the instant case to come within such circumstances. Mrs. Neff's own testimony indicates that she willingly continued cohabitation not through fear, but rather hope that the marriage would be saved.

With respect to appellant's charge of constructive desertion, she contends on appeal that under the facts presented she was legally justified in leaving the marital home in April in order to preserve her safety and self-respect. We disagree.

It is settled that conduct of one spouse which compels the other to leave may justify a divorce to the other on the ground of desertion, even though the conduct may not justify a divorce on the ground of cruelty; it must, however, be such as to render impossible a continuation of matrimonial cohabitation with safety, health, and self-respect. *Murphy v. Murphy*, 248 Md. 455, *Schwartzman v. Schwartzman*, 204 Md. 125; *Eberwein v. Eberwein*, 193 Md. 95; *Kruse v. Kruse*, 179 Md. 657. For such a situation to exist, there must be a pattern of persistent conduct which is detrimental to the safety or health of the complaining spouse, or so demeaning to his or her self-respect as to be intolerable. *Murphy v. Murphy*, *supra*.

We conclude, as the chancellor implicitly concluded, that the incidents complained of by the appellant were not sufficiently serious to come within the rule stated above. It has repeatedly been held that the law of Maryland does not countenance the separation of husband and wife, except for grave and weighty reasons. *Murphy v. Murphy*, *supra*; *Harrison v. Harrison*, 223 Md. 422. However objectionable Mr. Neff's conduct may have been, when weighed in the balance against the rule of the cases, we cannot find it legally sufficient to justify the wife's desertion. See, *e.g.*, *Ballan v. Ballan*, 251 Md. 737; *Brault v. Brault*, 189 Md. 175; *Ritz v. Ritz*, 188 Md. 336. Compare *Eberwein v. Eberwein*, *supra*; *Silverberg v. Silverberg*, 148 Md. 682.

*Decree affirmed, appellee to pay costs.*