## LYLE THOMAS BRYANT *v.* DEBORAH KAY BRYANT

[No. 70, September Term, 1972.]

*Decided September 11, 1972.*

The cause was argued before MORTON, ORTH and MOY-LAN, JJ.

*John F. McClellan, Sr.,* for appellant.

*Henry L. Conway, Jr.,* for appellee.

MORTON, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court

for Anne Arundel County awarding the appellee-wife a divorce a mensa et thoro on the ground of constructive desertion. It is contended that the evidence was legally insufficient to justify the issuance of the decree.

The nineteen year old wife and the twenty-three year old husband were married on March 9, 1969. Six months later their only child was born. In August, 1970, the husband left the wife and stayed away approximately nine months. A reconciliation occurred but the parties again separated in May, 1971, when the wife left their apartment and took up residence with her parents.

The wife testified that prior to the separation in May, 1971, her husband "became very indifferent * * * he told me he didn't love me anymore and that he didn't want to be married to me anymore and in so many words, he wanted me to get out. * * * I told him I wouldn't leave and he said that if I didn't leave that I would be out on my ear anyway in a month's time because he wouldn't pay the rent. And I came home one afternoon and he had my clothes all packed. I could see there that he wanted me to leave and I didn't want to leave him. I tried my best to make a go of my marriage and to keep our family together and I didn't want to disrupt my baby's life. But it was evident to me that Lyle just didn't love me and it seemed to me that he didn't love his baby either. And he made it very difficult for me. He was sarcastic in his remarks to me. I asked him if he loved me anymore and he said, 'no' and he suggested that the two of us separate and then in eighteen months we could be divorced."

There was filed in evidence a note which the husband wrote to the wife, apparently at her request, to the effect that: "Do [sic] to the fact that I wish to dissolve my marriage, I desire that Deborah Bryant leave." When asked what her desires were at the time the note was given to her, the wife replied: "Well, deep down in my heart, I wanted, I prayed that we could make a go of it and have a happy home but it was evident that Lyle didn't want that and no matter what I did, I begged

and I —." Upon receiving the note, she packed her personal effects and those of the baby and went to live with her parents where she has remained ever since.

Sometime thereafter the wife saw an attorney who prepared a so-called separation agreement but the husband refused to sign it, stating that he "couldn't afford what the agreement was asking."

The husband took the stand and when asked, "You no longer wished to live with your wife, isn't that correct?", he replied: "Yeah." He conceded that on one occasion he had packed his wife's and child's clothing while she was out but asserted that he thought he was being helpful since "I was under the understanding that we were voluntarily going to separate." He also admitted signing his wife's name to the title of their car, which was in joint names, and selling it without her knowledge. In response to a question from the chancellor concerning what the problem was in his marital relation, the husband replied: "I just felt that we just couldn't get along really. * * * At the time of our marriage, we really— I don't think we really planned on getting married * * *."

Some two decades ago the Court of Appeals in *Scheinin v. Scheinin,* 200 Md. 282, delineated the principles of law governing the granting of divorces on the ground of constructive desertion. There, it was said, at 290:

> "It is accepted that any conduct of a husband that renders the marital relation intolerable and compels the wife to leave him may justify a divorce on the ground of constructive desertion, even though the conduct may not justify a divorce on the ground of cruelty. [citation omitted]. Any misconduct of the husband will justify the wife in leaving him when it makes it impossible for her to live with him without loss of her health or self-respect, or gives her reasonable apprehension of bodily injury. If the husband's misconduct has been such as to ren-

der continuance of the marriage relation unbearable, justifying the wife in leaving him, he is the one who is guilty of desertion."

This still represents the law of this State. See *Murphy v. Murphy*, 248 Md. 455; *Colburn v. Colburn*, 15 Md. App. 503; *Neff v. Neff*, 13 Md. App. 128.

Here, we think it clear there was no evidence that the husband at any time during the course of the marriage assaulted or even threatened to assault or physically harm the wife and so she could not, at least on this record, have any reasonable apprehension of bodily harm. Nor was there any evidence that the husband's over-all conduct made it impossible for her to live with him without loss of her health for she readily admitted, when queried: "I'm a very healthy girl."

The appellee-wife argues, however, that the evidence indicates a pattern of persistent and demeaning conduct making it impossible for her to live with the husband and maintain her self-respect. It is true that a wife may be legally justified in leaving her husband if, by his conduct, he demonstrates "a pattern of persistent conduct which is * * * so demeaning to * * * her self-respect as to be intolerable." *Neff, supra* at 133. However, conduct by one spouse toward the other cannot be classified in law as intolerable simply because the complaining spouse says or feels that the conduct is of that dimension for it is well settled "that the law of Maryland does not countenance the separation of husband and wife, except for grave and weighty reasons." *Neff, supra* at 133.

In *Beavers v. Beavers*, 255 Md. 450, a case cited by the appellee, the evidence showed that the wife, in a fit of anger, on two occasions had grabbed the steering wheel of their car while the husband was driving at high speeds, nearly wrecking the car; had physically attacked him on a number of occasions; referred to the husband's mother as "an old son of a bitch and bastard"; had threatened to " 'get' her husband one way or the other";

had deliberately run her car into his; and on another occasion the wife "scratched, clawed and kicked him, tore his shirt and pants, kicked him in the ribs, tore open his Christmas gifts and threw them into the street * * *." The Court of Appeals held that this evidence was insufficient to support the chancellor's finding that the wife's conduct amounted to constructive desertion thereby justifying the husband in leaving their abode.

In *Ballan v. Ballan,* 251 Md. 737, the husband and wife ceased communicating with each other; she would not prepare his meals; when he attempted to sleep, she would play the television excessively loud in the bedroom; she placed cigarette butts, ashes and hard candy in his bed; and when he removed the television from their bedroom, she threw "everything I [she] could lay my hands on at him", including a lamp. The Court held that while the husband may have had good reasons to leave the marital home, the wife's conduct did not legally justify his doing so and affirmed the decree of the chancellor denying him a divorce on the ground of constructive desertion.

In *Neff, supra,* the husband told his wife he did not love her; struck her and knocked her to the floor on one occasion; was intoxicated and used vile language from time to time; his attitude toward her was cool and indifferent; he told her he didn't love her, never loved her and could not bring himself to kiss her. This Court held that such conduct did not justify the wife's leaving the husband and affirmed the decree of the chancellor below denying her a divorce.

It is apparent from these cases, which are typical of the plethora of cases treating the subject of constructive desertion, that one spouse's mere marital indifference or lack of demonstrated love, or rudeness or expressed desire to end the marriage relation, will not legally justify the other spouse's departure from the marital household however intolerable such conduct might appear to be to the demeaned spouse. And, yet, a careful analysis of the record before us indicates that these demeaning qualities

on the part of the husband are the only ones which the wife presents in justification of leaving her husband. That her husband was indifferent and sarcastic toward her, told her he had ceased loving her, wanted her to leave and get a divorce, threatened to (but did not) stop paying the rent, and packed her clothes on one occasion, may have been sufficient reasons in the eyes of the wife to justify her leaving but such conduct on the part of the husband (pursued in the privacy of their home as distinguished from display in public [1]) was not, in law, so demeaning as to leave her self-respect "shattered beyond repair", which is the legal measure of intolerableness. See *Murphy, supra* at 460.

Accordingly, we think the action of the chancellor in granting the wife a divorce a mensa et thoro was clearly erroneous and we are compelled to set aside his decree. In view of this conclusion, we do not reach the appellant's second contention that the evidence demonstrated that the wife left the domicile by agreement with the husband.

> *Decree vacated.*
> *Appellant to pay the costs.*

---

1. See *Li v. Li*, 249 Md. 593.