IRMA BINDER *v.* WILLIAM BINDER

[No. 125, September Term, 1972.]

*Decided December 7, 1972.*

The cause was argued before THOMPSON, MOYLAN and POWERS, JJ.

*Wallace Dann,* with whom were *Howard Calvert Bre-*

*gel, Calvert Ross Bregel, Sr.,* and *Bregel & Bregel* on the brief, for appellant.

*Jackson Brodsky* for appellee.

POWERS, J., delivered the opinion of the Court.

William Binder and his wife, Irma, were married in 1947, and for many years lived together in their home in Chevy Chase, in Montgomery County. Dr. Binder is a dentist, in practice at Marlow Heights, in Prince George's County. They have two children; a daughter, who married in September, 1970, and a son, then 16 years old.

On 2 October 1970 Dr. Binder moved out of the home, taking the son with him, and established a separate residence. On 27 October 1970 Mrs. Binder filed in the Circuit Court for Prince George's County a bill of complaint for permanent alimony and collateral relief. For grounds, she alleged that Dr. Binder had abandoned and deserted her without just cause or reason, that there was no hope of a reconciliation between the parties, and that her husband's abandonment of her was his final and deliberate act. Dr. Binder answered, admitting "* * * that the parties are not now living together and that there is no hope or expectation of a reconciliation between the parties * * *", and denying the other averments of the paragraphs alleging the grounds. For further answer he alleged that the conduct of the plaintiff was such as to make it intolerable for him to cohabit with her and for him and and the infant child to remain in the home.

The alleged abandonment and desertion, if proved and corroborated, would, *prima facie,* entitle the wife to a divorce *a mensa et thoro.* Code, Art. 16, § 25; Art. 35, § 4. Proof sufficient to establish the right of a wife to a divorce, either partial or absolute, is necessary to entitle her to a decree for permanent alimony. In *Schriver v. Schriver,* 185 Md. 227, 44 A. 2d 479, the Court of Appeals said, at page 241:

"In proceedings for permanent alimony or sep-

arate maintenance, the same requirements as to proof, including corroboration, are necessary as where divorce is sought."

The rule has been applied by that Court in *Hull v. Hull,* 201 Md. 225, 93 A. 2d 536; *Moran v. Moran,* 219 Md. 399, 149 A. 2d 399; *Stein v. Stein,* 251 Md. 300, 247 A. 2d 266, and in other cases.

At the trial held before Judge Perry G. Bowen, Jr., on 17 January 1972, Dr. Binder did not attack his wife's *prima facie* case of abandonment and desertion. He asserted and relied upon the affirmative defense of justification.

At the conclusion of the evidence, and after arguments of counsel, Judge Bowen delivered an oral opinion, which was the basis for his decree entered 28 January 1972 dismissing the bill of complaint and assessing taxable costs against the husband. We quote a portion of Judge Bowen's oral opinion:

> "Now, we are not prepared to decide on the basis of the evidence presented here today that the plaintiff has by a preponderance of the evidence shown that the leaving of the home, which is a fact, by the husband, was as a matter of law the desertion that the law requires to afford a ground for divorce. We are not saying that we would be prepared to rule if the husband had filed a cross bill for desertion on the grounds of constructive desertion and abandonment that we would be prepared to rule on the quantum of evidence that we have here today that he had by a preponderance of the evidence shown himself entitled to a divorce. What we are prepared to say is that on the basis of the evidence as it now stands before the Court, there is not a preponderance of evidence in this case which supports the plaintiff's position that his act was an unjustified desertion and therefore the plaintiff is entitled to the prayers in her bill. The Court

will, therefore, direct that this bill be dismissed, which leaves the parties in this position:

We have not made a judicial determination that the wife is at fault, nor have we made a judicial determination that the husband is at fault. We don't have the evidence before us to support the wife's position that the husband is at fault, and the husband has filed no application for determination by this Court that the wife is at fault."

In holding that Mrs. Binder was required to prove that Dr. Binder's leaving was an unjustified desertion, Judge Bowen erred. In *Fuller v. Fuller,* 249 Md. 28, 237 A. 2d 925, the Court of Appeals said, "To show the desertion of a spouse two elements need be present." The Court quoted from its earlier opinion in *Zulauf v. Zulauf,* 218 Md. 99, 145 A. 2d 414, where it said:

"Abandonment and desertion as grounds for a divorce contain two inherent elements: (i) the ending of cohabitation and (ii) the intention of the offending party to desert."

See also *Ballan v. Ballan,* 251 Md. 737, 248 A. 2d 871.

The two required elements were shown here, and were corroborated by other evidence as well as by Dr. Binder himself, in his testimony and in his answer. They were not disputed. Corroboration may come from the defending spouse as well as from other witnesses. *Deck v. Deck,* 12 Md. App. 313, 278 A. 2d 434.

The chancellor appeared to feel that there is a middle ground which arises when evidence supporting an affirmative defense, although not sufficient to carry the burden of proving it, weakens a plaintiff's *prima facie* case to a level below the plaintiff's burden. There is no such middle ground in the divorce law. Questions of credibility and weight aside, a plaintiff who proves a *prima facie* case for relief is entitled to that relief in the absence of an affirmative defense, established by a preponderance of the evidence.

We think that, subject to proof of Dr. Binder's affirmative defense, Mrs. Binder proved a case of abandonment and desertion, and that to hold otherwise would have been clearly erroneous. Maryland Rule 1086. Therefore we must examine the defense of justification.

Justification, whether it be asserted solely as an affirmative defense, or to support a cross complaint for affirmative relief, must be proved by a preponderance of the evidence. In *Roberts v. Roberts,* 160 Md. 513, 154 A. 95, the Court of Appeals said, at page 520:

> "Neither in the pleadings nor in his testimony did Roberts deny that he had in fact separated from his wife, but he attempted to excuse his abandonment * * *. The justification which he alleged was an affirmative defense, the burden rested upon him to establish it, and, since his statements as to it were not only contradicted by his wife but not corroborated by any other testimony whatever, it failed, and we find no error in so much of the decree as granted a divorce *a mensa et thoro* to the appellee."

That the same burden applies whether or not affirmative relief is sought, the Court of Appeals made clear in *Hyatt v. Hyatt,* 173 Md. 693 (not published in Maryland Reports), 196 A. 317, where the Court said:

> "The undisputed, corroborated evidence is that the defendant abandoned the plaintiff, and the conclusion on the evidence is that there is no hope or expectation of reconciliation, and without any legal justification on his part she would be entitled to a decree. Code, art. 16, § 39, and article 35, § 4. The plaintiff, having established these facts, the defendant must refute them, or show that the plaintiff was guilty of adultery, which is entirely absent in her case, or that she was guilty of such excessively vicious conduct or such cruelty as to justify his

> leaving her. In other words, if he defends on either of the two latter grounds he must show such facts as would entitle him to a decree had he filed the bill."

The same rule was followed by that Court in *Hull v. Hull, supra,* and in *Provenza v. Provenza,* 226 Md. 63, 172 A. 2d 503.

We should point out that a party who asserts an affirmative defense, but does not become a cross plaintiff seeking affirmative relief, is not subject to the statute requiring corroboration. Code, Art. 35, § 4, requires that in divorce cases no "decree be entered upon the testimony of the plaintiff alone; but * * * testimony in corroboration of that of the plaintiff shall be necessary * * *." In *Schriver v. Schriver, supra,* the Court of Appeals said, at page 241:

> "The principal object of the latter provision is to prevent collusion, and when the possibility of collusion is precluded, the corroboration need be but slight."

Since neither the wording of the statute nor its reason, to prevent collusion, applies to a defendant who is not seeking affirmative relief, corroboration of an affirmative defense is not necessary. By the very nature of the proceeding, the possibility of collusion is non-existent. The evidence supporting the defense may come solely from the defendant, and is subject only to the test of legal sufficiency and to the chancellor's evaluation of its weight and credibility.

It was not the wife's burden to prove that the husband's leaving the home was unjustified; the burden was upon the husband to prove his justification. When Judge Bowen said he was not prepared to rule that the husband had shown by a preponderance of the evidence that he was entitled to a divorce, it is not clear whether he was referring to the sufficiency of that evidence, or to its weight and credibility. Mindful that the latter in-

quiries are for the trier of the facts, we look to its sufficiency.

Dr. Binder's justification was presented in two aspects, one affecting himself, and the other affecting the minor son of the parties. He said that his wife is an alcoholic, was under the influence of alcohol most of the time for maybe three years, and had been drinking heavily for a far longer period. He said he was harassed with verbal abuse any time he was in the house, and that mealtimes were a horror because of harassment and abuse. He said that he had suffered from ulcerative colitis "a long time ago" and had recovered, but had been "under constant mental harassment, physical harassment, while living in the house." He further said "Since I have moved I sleep well, I eat well, my digestion is good. I have never felt better in my life."

He said that he had read on the disease of alcoholism and was aware that some patients are afflicted with the disease, but that he did not know how to cure it. He took his wife once to Alcoholics Anonymous against her will, and went with her to her physician. He also took her to her mother's home hoping that the mother would offer some assistance or influence. He knew that in addition to the alcoholism she was organically sick.

Dr. Binder agreed that his wife arranged for their daughter's wedding in September 1970, took care of purchasing for the trousseau and for gifts; that the future son-in-law lived in the Binder home for several months before the wedding, and that people were coming and going. His wife prepared dinners, but sometimes they were not much. He agreed that he and his wife had marital relations not long before he left.

With respect to the son, Dr. Binder said that his wife made life intolerable for their son and himself. He had to make a new home for the son where he could live in some sanity and sanctuary. He said that she beat the boy frequently during the day and during the night. He said that this conduct affected his son's health, physically and emotionally. He said the boy didn't grow or gain weight

for a number of years, that he didn't sleep well and that he fluctuated between A, B plus, and failure in school. As of the time of trial in January 1972, he said the boy was doing excellently in school, made the honor roll, was a competitive swimmer, had become a very fine artist, his emotional state was good, he slept well, and he had gained 30 pounds.

Mrs. Binder freely conceded at the trial that she was an alcoholic. In 1965 and 1966 she began to notice she was drinking too much. By 1970 she recognized that she had a serious problem, and tried to stop drinking, but couldn't. She agreed that she harassed her son verbally at times, but said that there was nothing physical. There were physical encounters between the parties at times, but neither treats them as being of major significance. She was under medical care and was hospitalized briefly early in 1970 for her alcoholism, but without lasting results. In June, July and August of 1971 she was hospitalized and then entered an institution for treatment of alcoholism, and said she had had no alcohol since then. She described herself as a non-drinking, sober alcoholic, an active member of Alcoholics Anonymous.

The daughter of the parties, who married in September 1970, had been away at college the greater part of the previous several years, but had spent several months at home preceding her marriage. She said that her mother was a meticulous housekeeper, and to the best of her ability kept every room in the best condition. She said that cooking was very important to her mother, and that she prepared elaborate gourmet meals, although not always successfully. The daughter testified that her mother "planned my wedding entirely." She picked out things at stores; she made all the hotel arrangements, the catering arrangements, and the selection of the invitations.

When Dr. Binder was asked why he didn't go back with his wife "now that she has made these steps and has apparently gotten well on the road to recovery", he replied, "There are several reasons. I don't trust her capacity to stay off of alcohol, and in the years that I

have known her she has never kept her word to me about anything."

There was evidence of the income and financial resources of the parties, and of the wife's needs.

In his brief Dr. Binder says, "* * * the factor that distinguishes this case and upon which the Chancellor relied most heavily was that the son of the parties was in the gravest difficulty and suffering from the unfavorable home situation caused by plaintiff."

What Judge Bowen said was, "* * * the uncontradicted evidence from all parties in this case is that it was the excessive drinking and the symptoms of this illness which caused the husband to leave his wife of 23 years and break up his home." He referred to the difficulties between the mother and son as an "added factor". We perceive no heavy reliance upon the problems between the mother and son.

Our attention has been called to several decisions in other states holding that mistreatment of children can reach such magnitude that it constitutes cruelty to the other parent. Such mistreatment is relevant in the divorce law only in its effect upon the complaining spouse, and generally is merely cumulative with other evidence of the conduct of the offending spouse.

We have had several occasions to consider the law in Maryland applying to constructive desertion or justified desertion. In *Renner v. Renner,* 16 Md. App. 143, 294 A. 2d 671; and *Bryant v. Bryant,* 16 Md. App. 186, 294 A. 2d 467, we reviewed the law discussed in *Scheinin v. Scheinin,* 200 Md. 282, 89 A. 2d 609; *Murphy v. Murphy,* 248 Md. 455, 237 A. 2d 523; *Ballan v. Ballan, supra; Beavers v. Beavers,* 255 Md. 450, 258 A. 2d 203; *Neff v. Neff,* 13 Md. App. 128, 281 A. 2d 556; and *Colburn v. Colburn,* 15 Md. App. 503, 292 A. 2d 121.

While *Shutt v. Shutt,* 71 Md. 193, 17 A. 1024; and *Wheeler v. Wheeler,* 101 Md. 427, 61 A. 216, may be relics of earlier days, the Court of Appeals has continued in these modern times to hold that alcoholism or excessive use of alcohol does not justify termination of a mar-

riage, unless it is accompanied by such conduct as to make it necessary for the injured party to leave. *Nicodemus v. Nicodemus,* 186 Md. 659, 48 A. 2d 442; *Brault v. Brault,* 189 Md. 175, 55 A. 2d 497; *Smith v. Smith,* 198 Md. 630, 84 A. 2d 890; and *Russell v. Russell,* 224 Md. 329, 167 A. 2d 770.

For the purpose of deciding the issue here, we consider Mrs. Binder fully responsible for her conduct as described in the evidence. We attribute full credibility to all the evidence supporting the defense of justification, including her treatment of the son of the parties, and take it as outweighing any evidence in conflict with it. Thus viewed, it falls considerably short of that standard of conduct required to establish justification.

Since the evidence was not sufficient to support Dr. Binder's defense of justification, the chancellor should have decreed payment of permanent alimony to Mrs. Binder, in an amount to be determined by him.

Mrs. Binder complains here that the chancellor erred in not requiring her husband to pay certain deposition costs incurred in the preparation of her case. We think he did err. Expenses incurred by a wife lacking independent means in the prosecution or defense of a divorce or related suit are generally required to be paid by the husband. In *Rubin v. Rubin,* 233 Md. 118, 195 A. 2d 696, the Court said at page 125:

> "The reasonable and necessary expenses or 'suit money' to which a wife is entitled, is generally defined as the money necessary to enable her to carry on or defend a matrimonial action, that is, the necessary expenses relating to bringing and carrying on or defending the action."

This suit money includes, when appropriate, such expenses as counsel fees, investigation expenses, travel expenses, expert witness fees, and others. It includes the cost of depositions in this case, whether or not taxable by the clerk.

Mrs. Binder argues that the chancellor erred in fixing

the amount of temporary alimony and counsel fees allowed in the suit below. The record indicates that Mrs. Binder made a payment to her counsel of $750.00, and that an interlocutory order required Dr. Binder to pay an additional $300.00 to co-counsel for Mrs. Binder. In her complaint Mrs. Binder prayed for an allowance for counsel fees. In argument her counsel requested a fee of $5,000.00. None was allowed in the final decree. From our review of the record we think the chancellor should have ordered Dr. Binder to pay an additional fee of $750.00 for services to the time of the decree.

After the decree was entered and an appeal taken, Mrs. Binder filed a petition for costs and alimony pendente lite on appeal. Some time later the chancellor filed a memorandum and order allowing alimony pending the appeal in the amount of $200.00 a week, and initial counsel fee on appeal in the amount of $1,000.00. He stated that allowance for costs and expenses should abide the final determination of the case.

Mrs. Binder filed a separate appeal from that order. It was made a part of the original case in this Court. She argues that the order should have allowed costs, and that the alimony pending appeal was insufficient; and should have been made retroactive. She also asked again for counsel fees in the trial court. This last question could not be dealt with in an order giving relief pending appeal, but is involved in the appeal from the decree. The question of retroactivity was not raised below, and is not before us. Maryland Rule 1085. The costs will be covered by our mandate. We cannot say that the amount of alimony allowed in the order was erroneous.

*Decree of 28 January 1972 reversed and case remanded for passage of a decree in accordance with this opinion.*

*Costs below and in this Court to be paid by appellee.*