### JOHN H. DUPREE *v.* SARAH C. DUPREE

[No. 873, September Term, 1974.]

*Decided June 2, 1975.*

The cause was argued before ORTH, C. J., and MORTON and THOMPSON, JJ.

*Donn K. Jenkins* for appellant.

*James F. Fitzgerald* and *Thomas C. Hayden, Jr.,* for appellee.

THOMPSON, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for Montgomery County awarding Sarah C. Dupree, appellee, a divorce A Vinculo Matrimonii on the ground of constructive desertion. John H. Dupree, appellant, contends that the evidence was legally insufficient to support the decree.

The Duprees were married on February 21, 1968; they have one child, a son, who was born on March 10, 1972. Final separation of the parties occurred on June 18, 1973. Mrs. Dupree testified there was a decided lack of communication between her and her husband; that her husband began to have "very violent temper displays"; and that he would "throw things and hit me and that sort of thing." She then testified regarding specific misconduct of her husband which will be listed chronologically:

November 1971 — While Mrs. Dupree was pregnant her husband threw her to the floor. Also while she was pregnant, he threw a dish of applesauce at her which struck a wall.

April 1972 — Angered by Mrs. Dupree's visit to an art museum, appellant threw a pan at her; threw a vase of flowers the length of the house breaking a door; and kicked a large hole in the living room wall.

Fall, 1972 — While lying in bed with their child, appellant became angry with appellee and hit her across the thigh with a belt.

January 18, 1973 — Appellant struck appellee over the head with a newspaper and used abusive language toward her.

February 15, 1973 — Appellant came at appellee "in a rage", grabbed her throat, slapped her in the face, pushed her up against their child's playpen and called her "an irrational ass."

March 8, 1973 — Appellant threatened to hit appellee with a child's toy, used some obscenities, and threw a knife across the room.

March 10, 1973 — Appellant flew into a rage and hit appellee in the back, arm and thigh.

June 2, 1973 — Appellant hit appellee in her jaw, grabbed her neck and "practically strangled" her. Appellee extricated herself and fled the house.

June 6, 1973 — After using some obscenities, appellant chased appellee through the house with a knife in his hands.

June 18, 1973 — Appellee described what transpired on this date as follows:

"A. We were in bed. It was in the morning and my husband was talking about a horse he had which was supposed to be running in a race that evening, and he said he couldn't find a driver because no one wanted to drive the horse, he wasn't very good, and I said, you never learn, do you? And that infuriated him.

He grabbed a belt and hit me on the upper leg and I ran into the baby's room.

Q. What time did that occur?

A. Probably about 8:00 in the morning.

Q. As a result of that instance, did you determine to do anything?

A. Yes, I did. I decided I would leave.

Q. And did you in fact leave?

A. Yes, I did.

Q. On that day?

A. Yes.

Q. And where did you go?

A. I went to my parents."

Mrs. Dupree also testified that her husband admitted committing adultery. She added that she found several photographs of semi-nude women taken by her husband. Mrs. Dupree also stated that approximately one month prior to the final separation appellant asked her to leave. On cross-examination, appellee stated that she had never seen a doctor for treatment of her injuries.

The appellant's answer to appellee's request for admissions of facts was admitted into evidence. In the answer he stated that on several occasions he had "very lightly" slapped or shook appellee when she became hysterical. Appellant's answers to interrogatories in which appellant admitted taking the above described photographs were also admitted.

A neighbor of the Duprees', Ms. Eleanor Hart, testified that she felt that appellant's attitude toward appellee and the way he spoke to her were "very distressing" and that appellant "showed great disrespect and contempt for her [appellee]". She also stated that she observed applesauce on the wall of the Duprees' apartment in the winter of 1971 and that she had seen appellant put his hands on appellee in a manner which was in no way affectionate.

The appellee's mother testified that appellee called her on the morning of the separation and told her she had decided to leave appellant because she "could not stand it any longer." She also stated that she had observed a broken glass door in the Duprees' home and was told by appellee that appellant had broken the glass. On cross-examination she added that, while she had never seen appellant strike appellee, she had seen him grab hold of her.

Appellant denied striking his wife with a belt on June 18, 1973 and stated that he threw things around the house in order to vent his frustrations on inanimate objects rather than persons.

The Chancellor awarded a divorce A Vinculo Matrimonii to the appellee on the ground of constructive desertion and made the following findings:

"I am confident as to physical violence, evidenced

by the husband, as well as abusive language and treatment, all of which taken together would reasonably constitute the grounds on which the bill of complaint has been filed.

"Accordingly the Court will grant the relief prayed for in the bill and grant a divorce a vinculo matrimonii."

The Maryland rule relative to the grant of a divorce on the ground of constructive desertion has been stated in numerous cases, the most recent of which was *Ches v. Ches*, 22 Md. App. 475, 323 A. 2d 651 (1974) where this Court stated at 482-483:

"It is also settled that the conduct of one spouse which causes the other to leave the marital abode may justify a divorce on the ground of constructive desertion, even though the offensive conduct might not justify a divorce on the ground of cruelty. To justify the departure by the offended spouse, however, the conduct must be such as to render impossible a continuation of marital cohabitation with safety, health and self-respect. *Murphy v. Murphy, supra; Schwartzman v. Schwartzman,* 204 Md. 125, 102 A. 2d 810 (1954); *Eberwein v. Eberwein,* 193 Md. 95, 65 A. 2d 792 (1949); *Kruse v. Kruse,* 179 Md. 657, 22 A. 2d 475 (1941). As Chief Judge Murphy stated for this Court in *Neff v. Neff, supra:*

'For such a situation to exist, there must be a pattern of personal conduct which is detrimental to the safety or health of the complaining spouse, or so demeaning to his or her self-respect as to be intolerable.' "

The question presented here is whether the acts complained of by the appellee were sufficient to bring this case within the rule stated above. We agree with the Chancellor that they were.

Our review of the myriad cases in this area, cases which of

course all turn on their peculiar factual situations, leads us to conclude that the instant case most closely resembles *Carpenter v. Carpenter,* 257 Md. 218, 262 A. 2d 564 (1970). In *Carpenter* a decree granting a divorce to the wife on constructive desertion grounds was affirmed where the evidence showed that the husband's attitude was abusive and intolerable, that the husband called the wife names, that he beat her on at least one occasion and that on several occasions he had become enraged. The wife's mother testified that her daughter was in "terrible shape" when she finally left the husband.

As in *Carpenter,* in the instant case we have evidence that on numerous occasions the appellant struck his wife or put his hands around her throat, that on at least two occasions the appellent threw things at her, that the appellant's attitude toward appellee was very distressing and that he showed great disrespect and contempt for appellee and that on the day appellee finally left she stated she did so because she "could not stand it any longer." There was also evidence that on several occasions appellant used vile and abusive language toward appellee. In that regard the Court in *Carpenter,* quoting from *Scheinin v. Scheinin,* 200 Md. 282, 89 A. 2d 609 (1952), stated:

" "* * * Likewise, although the use of profane and indecent language by a husband does not of itself constitute cruelty, yet a husband's habit of using such language before his wife, especially in the presence of the children, is a material fact that may be considered together with other misconduct in establishing cruelty. The fact that a husband curses his wife occasionally, or calls her "feebleminded" or "nutty", or casts other derogatory epithets upon her, does not entitle her to a divorce, unless it endangers her health. *Oertel v. Oertel,* 145 Md. 177, 125 A. 545; *McKane v. McKane,* 152 Md. 515, 137 A. 288; *Hillwood v. Hillwood,* 159 Md. 167, 150 A. 286. But where a husband habitually addresses his wife in vile and profane languge, and occasionally resorts to acts of physical violence, the entire

course of conduct may constitute cruelty, although the physical violence alone may not be sufficient to justify a divorce.' " 257 Md. at 225-226.

Added to this is the admission by appellant to appellee that he had committed adultery. While the extra-marital sexual activities of a spouse are not dispositive in constructive desertion cases, they may be considered.

"Likewise, evidence that a husband is infatuated with, or extremely attentive to, another woman and treats his wife with silent contempt is entitled to consideration in determining whether he has been guilty of constructive desertion." *Scheinin v. Scheinin, supra* at 292.

Appellant, citing *Beavers v. Beavers,* 255 Md. 450, 258 A. 2d 203 (1969) argues that the Chancellor erred because there was no medical evidence introduced to show the adverse physical effects of his conduct on appellee. There is however no need in every case of constructive desertion to show adverse medical effects. *Carpenter v. Carpenter, supra.* In short the actions of appellant evidenced a pattern of personal conduct which was detrimental to the safety of the appellee and was so demeaning to her self-respect as to be intolerable.

We find none of the cases cited by appellant in support of his contention controlling on our decision.

Appellant's reliance on *Ches v. Ches, supra,* is misplaced. In that case this Court reversed the chancellor's decree granting a divorce to the wife on constructive desertion grounds. *Ches* is distinguishable from the case at bar on several grounds. First, in *Ches,* there was no altercation or violence on the date of eventual separation. In fact the last act of violence directed at the wife in *Ches* occurred two weeks before the separation and the wife, although she left for the night at that time, did return and reside with the husband for two weeks. The Court in *Ches* stressed this fact and cited *Neff v. Neff,* 13 Md. App. 128, 281 A. 2d 556 (1971)

in which the wife remained in the home four months after being struck by the husband. The Court added:

"Again, it is not without significance that the wife returned to the husband and remained with him — apparently without fear — from January 10, the date of the incident, until January 25, affording herself ample opportunity in the interim the consult counsel for the preparation of her bill of complaint and to arrange for the moving of the furnishings on the day the bill of complaint was to be filed." 22 Md. App. at 487.

In the instant case the separation occurred on the same day and as the immediate result of the appellant's striking appellee. Second, in *Ches* the accusations of prior violence made by the wife amounted to little more than vague generalizations and showed no persistent course of conduct on the husband's part. The wife testified that in their 26 years of marriage there were "possibly" 12-15 acts of violence. In the instant case Mrs. Dupree particularized 9 violent acts of ever-increasing frequency, leading to the separation, all occurring within one and one-half years of the separation. Third, in *Ches*, the verbal abuse suffered by the wife consisted of being called "coocoo" and being told that she did not "keep house" well. In the instant case the appellant on several occasions directed vulgar language at appellee. In general the appellant's language toward appellee was described by a neighbor as showing "great disrespect and contempt for [appellee]." Fourth, in *Ches*, a major factor relied on by the chancellor was the wife's belief that the husband was having an affair with another woman. This Court rejected that reasoning because of lack of proof and stated:

"Certainly an imagined 'other woman' would not justify a wife in leaving her husband and, in this case, the incident of January 10, 1973 was surely not of a sufficiently serious nature as a single incident to justify the wife's departure." 22 Md. App. at 487.

In the instant case the "other woman" (or women) is far from imagined. Appellant told appellee that he had committed adultery. Added to this are the pictures of semi-nude women taken by appellant.

The *Ches* case must be read in light of the factual setting described above and analyzed with a view toward the reasoning employed by the chancellor. From our reading and analysis of *Ches* we conclude it does not apply to the instant case.

In *Murphy v. Murphy*, 248 Md. 455, 237 A. 2d 523 (1968), the Court was dealing with a single act of violence and held that the act was not of sufficient magnitude to constitute constructive desertion. In the instant case there was, as detailed above, a persistent and ever-increasing series of violent acts which culminated in the separation of the parties.

In *Bryant v. Bryant,* 16 Md. App. 186, 294 A. 2d 467 (1972), there were no violent acts. The husband merely told the wife that he desired that she leave because he did not love her. He signed a note to that effect. This Court held that the husband's conduct amounted to no more than "mere marital indifference or lack of demonstrated love" and did not justify a divorce decree. In the instant case as mentioned above, there was extensive evidence of violence as well as evidence of demeaning conduct directed by appellant toward appellee.

In *Richardson v. Richardson,* 17 Md. App. 665, 304 A. 2d 1 (1973) this Court held that there was a lack of sufficient proof to show that the husband was a homosexual and that therefore there was no justification for the wife's departure from the marital domicile.

*Ballan v. Ballan,* 251 Md. 737, 248 A. 2d 871 (1969), presented a case in which the evidence showed that the wife cleaned the bathroom in a noisy fashion and turned up the volume of the television set to prevent the husband from sleeping. She also placed cigarette butts and hard candy in the bed. There was only 1 act of violence testified to. The Court of Appeals of course held that constructive desertion

had not been shown by the husband. *Ballan* is clearly distinguishable from the instant case.

In *Beavers v. Beavers, supra,* there was a series of violent actions, including at least one attempt by the wife to force the couple's automobile from the road. The Court in *Beavers* reversed a decree granting the husband a divorce on the ground of constructive desertion. The Court reasoned that the husband could not have been placed in fear by the wife's action because he remained with her for some time after those acts. The Court stated in 255 Md. at 460:

> "The husband testified that he was afraid of the wife 'to a degree * * * I don't feel as though I am safe around her. These tantrums can come up any moment.' The testimony, however, established that he remained in the marital home until January, 1968, and, indeed, that he drove *with his wife* to the hospital to see their granddaughter shortly before he left. If there were any fear of his wife, it was quite mild inasmuch as she would have had a golden opportunity to have seriously injured or even have killed him while *she* drove the automobile to the hospital. In our opinion, the actions of the husband show that he did not really fear for his life and safety and had no legal grounds for any such fear."

This rule has been followed in several other Maryland cases. *See Neff v. Neff, supra; Ritz v. Ritz,* 188 Md. 336, 52 A. 2d 729 (1947); *Kruse v. Kruse,* 179 Md. 657, 22 A. 2d 475 (1941).

In the instant case as discussed above the appellee left the appellant immediately after the last act of violence directed at her. Her actions were justified and may have prevented her from suffering further physical abuse.

The other question raised by appellant is whether there was sufficient corroboration to support the evidence. In contested cases of this nature it has been held that even slight corroborating evidence is sufficient. *Carpenter v. Carpenter, supra; Colburn v. Colburn,* 15 Md. App. 503, 292 A. 2d 121 (1972). Appellee's mother and Ms. Hart both stated

that they had seen appellant grab the appellee in a manner which could not be termed affectionate. Ms. Hart stated that the way the appellant spoke to appellee "showed great disrespect and contempt for her." She added that she had seen applesauce on the Duprees' wall. More important were the admissions of the appellant that he had struck or slapped appellee on several occasions. *Deck v. Deck,* 12 Md. App. 313, 319, 278 A. 2d 434 (1971). We conclude that the evidence provided sufficient corroboration.

*Decree affirmed.*
*Appellant to pay costs.*